**SANJAY WADHWA**
**SENIOR ASSOCIATE DIRECTOR**
Marc P. Berger
Sheldon L. Pollock
John O. Enright
Tejal D. Shah
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0121 (Shah)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                            Plaintiff,<br><br>   -against-<br><br>GINO M. PEREIRA,<br><br>                            Defendant. | <u>COMPLAINT</u><br><br>19 Civ. 5527<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Gino M. Pereira ("Pereira") alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1. From approximately July 2014 through October 2015 (the "Relevant Period"), Pereira, the founder, president, and chief executive officer of Nxt-ID, Inc. ("NXTD"), a security technology company and public issuer with common stock traded on the Nasdaq Capital Market ("Nasdaq"), defrauded investors by knowingly or recklessly engaging in a stockbroker bribery scheme.

2. During the Relevant Period, Pereira caused NXTD to enter into purported "consulting agreements" with two investor-relations companies to provide a pretense through which he could funnel bribes to a registered representative (i.e., a stockbroker) who worked for a Staten Island-based broker-dealer ("Broker-1"). That is, Pereira wired monies out of NXTD's bank account to the investor-relations companies' bank accounts under the guise that the wires were payments for legitimate investor-relations services, when Pereira knew that the individuals who owned those investor-relations companies, referred to herein as "Intermediary-1" and "Intermediary-2," would use at least some portion of the funds to pay Broker-1 bribes to buy NXTD stock in his customers' accounts.

3. In sum, Pereira sent the investor-relations companies at least $136,000, and Intermediary-1 and Intermediary-2 paid Broker-1 at least $20,000 in cash bribes in exchange for Broker-1 recommending and buying more than $750,000 worth of NXTD common stock in his customers' accounts, without disclosing the fact or amount of the bribes he received to those customers.

## VIOLATIONS

4. By virtue of the foregoing conduct and as further alleged herein, Pereira violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

5. Unless Pereira is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

7. The Commission seeks a final judgment: (a) permanently enjoining Pereira from engaging in the acts, practices, and courses of business alleged here against him and from committing future violations of the provisions of the federal securities laws he is alleged to have violated; (b) ordering Pereira to disgorge the ill-gotten gains that he received as a result of the violations alleged here and to pay prejudgment interest thereon; (c) ordering Pereira to pay a civil money penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Pereira from serving as an officer or director of any company that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; (e) permanently prohibiting Pereira from participating in any offering of a penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and (f) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

9. Pereira, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10. Venue lies in this District under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Eastern District of New York. Among other things, Broker-1 bought NXTD stock in his customers' accounts while working in his offices in Staten Island and Long Island in the Eastern District of New York.

## DEFENDANT

11. **Pereira**, age 62, resides in Oxford, Connecticut and Vero Beach, Florida. He ran NXTD from approximately February 2012 until September 13, 2019, when he resigned from the company. During this period of time, Pereira was NXTD's chief executive officer and president, as well as a member of the company's board of directors.

## RELEVANT ENTITY

12. **NXTD** was incorporated by Pereira in Delaware on or about February 8, 2012 as a "technology company that is focused on products, solutions, and services that have a need for biometric secure access control." NXTD's principal place of business is in Melbourne, Florida. NXTD registered its common stock with the Commission in May 2013 under Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)]. From approximately August 2, 2013 to September 10, 2014, the OTC Link, an interdealer quotation service operated by the OTC Markets Group Inc., quoted the prices of NXTD's shares of common stock. From at least January 18 to September 10, 2014, NXTD's common stock met the definition of a "penny stock" under Section 3(a)(51) of the Exchange Act [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240. 3a51-1], because the stock traded below five dollars per share and did not satisfy any of the exceptions to the definition of "penny stock" set forth in Rule 3a51-1. NXTD's common stock began trading on Nasdaq on September 11, 2014. According to its 2018 Form 10-K, NXTD is

now a "security technology company" operating "in one segment—hardware and software security systems and applications."

## FACTS

### I. PEREIRA USED INTERMEDIARIES TO BRIBE BROKER-1 TO PURCHASE NXTD STOCK

13. During the Relevant Period, Pereira retained firms run by Intermediary-1 and/or Intermediary-2 for the purported purpose of providing investor-relations services to NXTD, with the understanding that they would use at least some portion of the fees they received to pay bribes to Broker-1 to purchase NXTD stock in his customers' accounts.

14. In sum, Pereira sent Intermediary-1 and Intermediary-2 at least $136,000, and they paid Broker-1 at least $20,000 in cash bribes in exchange for Broker-1 recommending and buying more than $750,000 worth of NXTD common stock in his customers' accounts. Broker-1's customers were harmed because unbeknownst to them, Broker-1's decision to invest their money in NXTD was based on the fact that he was being bribed, rather than his view that the investment was in their best interests. Broker-1's customers suffered losses of more than $100,000 as a result of his purchases of NXTD stock in their accounts.

15. Pereira frequently communicated with Intermediary-1 and Intermediary-2 via Wickr, an end-to-end encrypted and content-expiring messaging application, to conceal and destroy their communications concerning the scheme.

    **A.    From July 2014 to November 2014, Pereira Paid Intermediary-1 Approximately $74,000, at Least in Part to Bribe Broker-1 to Buy NXTD Stock in His Customers' Accounts**

16. In or about July 2014, Intermediary-1 introduced Pereira to Broker-1. After the meeting, Intermediary-1 told Pereira that Broker-1 was interested in purchasing NXTD stock in

5

his customers' accounts at his employer, Broker-Dealer-1, a Staten Island-based registered broker dealer, but needed a "financial incentive" to do so.

17. On July 8, 2014, Pereira caused NXTD to enter into a two-month "consulting agreement" with IR Firm-1 ("Purported IR Firm-1 Consulting Agreement"), which Intermediary-1 controlled. Under the terms of that agreement, NXTD agreed to pay IR Firm-1 a total of $42,000 in exchange for "investor relations services" that included "advising NXT[D]'s management concerning marketing ideas, investor profile information, methods of expanding NXT[D]'s investor support and increasing investor awareness of NXT[D]." Pereira knew, however, that the true purpose of the agreement was to provide a guise through which he could pay bribes to Broker-1 through Intermediary-1.

18. On July 9, 2014, Broker-1 began purchasing NXTD stock for his customers.

19. Shortly thereafter, Pereira visited Broker-Dealer-1's office on Long Island where Broker-1 worked to talk to Broker-1 and other brokers about NXTD. Following the meeting, Broker-1 began purchasing more NXTD stock in his customers' accounts.

20. From July 15, 2014 to September 3, 2014, Pereira caused NXTD to send four wire transfers totaling $44,000 to IR Firm-1's bank account, from which Intermediary-1 withdrew cash to pay Broker-1. In accordance with Pereira and Intermediary-1's agreement concerning the Purported IR Firm-1 Consulting Agreement, Intermediary-1 used those funds to pay Broker-1 a cash bribe of at least $5,000.

21. On September 9, 2014, NXTD announced that it had closed on an underwritten public offering of its common stock and warrants, which caused its stock price to drop. Broker-1 complained about this development to Intermediary-1, who arranged a meeting with Pereira on September 13, 2014.

22. At the meeting, Pereira and Broker-1 formally agreed that, going forward, Pereira would pay Broker-1, in cash and through Intermediary-1, 10% of the value of NXTD stock that Broker-1 purchased in his customers' accounts. Accordingly, Pereira continued to knowingly cause NXTD to wire funds to IR Firm-1's bank account.

23. In sum, between July 2014 and November 2014, Pereira paid IR Firm-1 approximately $74,000, and Intermediary-1 paid Broker-1 at least $15,000 in cash bribes.

24. From July 9, 2014 to December 1, 2014, Broker-1 purchased a total of 231,253 shares of NXTD in his customers' accounts at a gross cost of more than $566,079.

**B.  In 2015, Pereira Paid Intermediary-1 and Intermediary-2 Over $62,000, at Least in Part to Bribe Broker-1 to Buy NXTD Stock in His Customers' Accounts**

25. On January 15, 2015, Pereira caused NXTD to enter into a "Consulting Agreement" with IR Firm-2, similar to the agreement NXTD had entered into with IR Firm-1 ("Purported IR Firm-2 Consulting Agreement").

26. Under the terms of this agreement, IR Firm-2, an investor-relations firm run by Intermediary-1 and Intermediary-2, agreed to "[a]ssist [NXTD] in introductions to investor relations companies, media outlets, analysts or broker dealers" and "conduct meetings in person or by telephone, with prospective brokers or the investment public." In exchange, NXTD agreed to pay IR Firm-2 a monthly fee of $5,000 and 5,000 shares of common stock. The agreement also provided that NXTD would reimburse IR Firm-2 for any expenses that NXTD incurred. Like the Purported IR Firm-1 Consulting Agreement, the Purported IR Firm-2 Consulting Agreement provided a guise through which Pereira could pay intermediaries to funnel bribes to Broker-1.

27. For example, on September 17, 2015, Intermediary-1 emailed Pereira an invoice addressed to NXTD and in the amount of $12,000 for a purported "Investor Relations event for

7

brokers and investors." Pursuant to the Purported IR Firm-2 Consulting Agreement, NXTD was obligated to reimburse IR Firm-2 for the expense.

28. The September 17, 2015 invoice was, in reality and as Pereira knew, not for an "Investor Relations event for brokers and investors." Rather, Pereira knew the invoice was being used to disguise the payment of a cash bribe to Broker-1.

29. On September 24, 2015, Pereira caused NXTD to wire $12,000 to a bank account in the name of IR Firm-2. In turn, Intermediary-1 and Intermediary-2 paid Broker-1 a cash bribe of at least $5,000.

30. In sum, between January 2015 and October 2015, Pereira paid IR Firm-2 over $62,000 and Intermediary-1 and Intermediary-2 paid Broker-1 at least $5,000 in cash bribes. During this time period, Broker-1, operating out of Broker-Dealer-1's Long Island office, bought a total of 107,640 additional shares of NXTD stock for his customers at a gross cost of $235,584.

## FIRST CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) Thereunder**

31. The Commission realleges and incorporates by reference here the allegations in paragraphs 1 through 30.

32. Pereira, by use of the means or instruments of interstate commerce, or of the mails, or the facility of a national securities exchange, in connection with the purchase or sale of securities, and with knowledge or recklessness, (1) employed devices, schemes, and artifices to defraud; and/or (2) engaged in acts practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

33. By reason of the foregoing, Pereira, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Pereira and his agents, servants, employees, and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)];

### II.

Ordering Pereira to disgorge all ill-gotten gains he received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations;

### III.

Ordering Pereira to pay civil monetary penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

### IV.

Permanently prohibiting Pereira from serving as an officer or director of any company that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

### V.

Permanently prohibiting Pereira from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading,

or inducing or attempting to induce the purchase or sale of any penny stock, under Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

## VI.

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
September 30, 2019

*Sanjay Wadhwa*
SANJAY WADHWA
SENIOR ASSOCIATE DIRECTOR
Marc P. Berger
Sheldon L. Pollock
John O. Enright
Tejal D. Shah
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0121 (Shah)
shahte@sec.gov